The STATE BOARD OF EQUALIZATION for the State of Wyoming, Appellant (Respondent),

v.

The CITY OF LANDER, a Municipal Corporation, Appellee (Petitioner).

No. 93–211.

Supreme Court of Wyoming.

Oct. 3, 1994.

Joseph B. Meyer, Atty. Gen., and Michael L. Hubbard, Sr. Asst. Atty. Gen., Cheyenne, representing appellant.

Rick L. Sollars, Lander City Atty., and John T. Pappas, Lander, representing appellee.

Before GOLDEN, C.J., and THOMAS, CARDINE,* MACY,** and TAYLOR, JJ.

TAYLOR, Justice.

The Constitution and laws of the State of Wyoming exempt from taxation property

---

* Retired July 6, 1994.

** Chief Justice at time of oral argument.

which is used "primarily" for a "governmental purpose." In this appeal, we are asked to determine if property owned by one governmental entity that is partially leased to another governmental entity is subject to taxation. The State Board of Equalization found that the leased portion of the property was subject to taxation by a third governmental entity. On appeal, the district court disagreed and determined the property was exempt from taxation.

Although our rationale differs, we affirm the district court's ruling.

## I. ISSUES

Appellant, the State Board of Equalization for the State of Wyoming, presents a single issue:

Is property owned by the City of Lander and leased to the Wyoming Department of Environmental Quality reasonably necessary or essential to the efficient operation and maintenance of the City of Lander and therefore exempt from Wyoming property taxes?

Appellee, the City of Lander, restates the issue as:

Is the portion of the Lander City Hall, which is owned by the City of Lander and leased to the State of Wyoming for use as offices by the Department of Environmental Quality used primarily for a government purpose and therefore exempt from Wyoming property taxation?

## II. FACTS

In 1991, Fremont County, Wyoming (County) issued a property tax assessment to the City of Lander (City). The assessment notice stated market and assessed values for a portion of the Lander City Hall (City Hall). A year earlier, the City leased approximately one-half of the office space in the newly acquired City Hall to the Department of Environmental Quality of the State of Wyoming (DEQ). The assessment notice declared that the leased portion of the City Hall was subject to taxation. The City contested the property tax assessment.

In a contested case hearing before the Fremont County Board of Equalization, the County Assessor maintained the City was required to pay property taxes because a portion of City Hall was being leased to DEQ "for profit" by the City. The City Clerk/Treasurer explained the City was not earning a profit from the lease because all City Hall rents were assigned to the State of Wyoming Farm Loan Board under terms of a loan agreement which was used to finance the purchase of the building. The City insisted that property of cities used primarily for a governmental purpose is exempt from taxation. The Fremont County Board of Equalization denied the tax protest.

The City filed an appeal with the State Board of Equalization (Board). The Board determined that the City Hall office space leased to DEQ was taxable. The Board agreed that property used primarily for a governmental purpose was exempt from taxation. However, the Board found that to be exempt, the property must be used to fulfill a purpose that comes within the duties of the governmental entity seeking the exemption. The Board determined that the portion of the City Hall leased to DEQ was taxable because it was "not reasonably necessary nor an essential facility to the operation" by the City of a City Hall.

After exhausting its administrative remedies, the City filed an appeal in district court. The district court found that the City Hall was being used solely for a governmental purpose, either by the City or by DEQ, and was exempt from taxation. The Board filed this appeal to challenge the district court's decision.

## III. DISCUSSION

■ Administrative decisions of the Board are subject to judicial review. Wyo. Stat. § 39–1–306 (1994). The scope of review is directed by the Wyoming Administrative Procedure Act, which provides, in pertinent part:

(c) To the extent necessary to make a decision and when presented, *the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the*

*meaning or applicability of the terms of an agency action.* In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

\*    \*    \*    \*    \*    \*

(B) Contrary to constitutional right, power, privilege or immunity;

\*    \*    \*    \*    \*    \*

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo.Stat. § 16–3–114(c) (1990) (emphasis added). Agency conclusions of law are affirmed when the agency acts in accord with the law; if not, the conclusion of law is corrected. *Barcon, Inc. v. Wyoming State Bd. of Equalization,* 845 P.2d 373, 376 (Wyo. 1992) (*quoting Employment Sec. Com'n of Wyoming v. Western Gas Processors, Ltd.,* 786 P.2d 866, 871 (Wyo.1990)). We accord no special deference to the district court's decision; instead, appellate review is conducted as if the matter had come directly to us from the agency. *Casper Iron & Metal, Inc. v. Unemployment Ins. Com'n of Dept. of Employment of State of Wyo.,* 845 P.2d 387, 392 (Wyo.1993).

Generally, all property in Wyoming is subject to taxation based upon a system of uniform valuation:

(a) All property, except as in this constitution otherwise provided, shall be uniformly valued at its full value as defined by the legislature, in three (3) classes as follows:

(i) Gross production of minerals and mine products in lieu of taxes on the land where produced;

(ii) Property used for industrial purposes as defined by the legislature; and

*(iii) All other property, real and personal.*

Wyo. Const. art. 15, § 11 (emphasis added). The legislature has affirmed its intent to make all property subject to taxation, unless prohibited by law or expressly exempted:

All property within Wyoming is subject to taxation as provided by this act except as prohibited by the United States or Wyoming constitutions or expressly exempted by W.S. 39–1–201.

Wyo.Stat. § 39–1–102 (1994).

The Constitution of the State of Wyoming states a general exemption to taxation when property is owned by a governmental entity and used "primarily" for a "governmental purpose:"

**The property of** the United States, the state, counties, **cities,** towns, school districts and municipal corporations, **when used primarily for a governmental purpose,** and public libraries, lots with the buildings thereon used exclusively for religious worship, church parsonages, church schools and public cemeteries, **shall be exempt from taxation,** and such other property as the legislature may by general law provide.

Wyo. Const. art. 15, § 12 (emphasis added). The legislature has chosen to expressly exempt from taxation certain property of cities and towns. The exemptions are stated in Wyo.Stat. § 39–1–201(a)(v)(C) (1994), which provides, in pertinent part:

(a) The following property is exempt from property taxation:

\*    \*    \*    \*    \*    \*

(v) **Property of Wyoming cities and towns owned and used primarily for a governmental purpose including:**

\*    \*    \*    \*    \*    \*

(C) **City or town halls,** police stations and equipment, traffic control equipment, garbage collection and disposal equipment and lands and buildings used to service and repair the halls, stations or equipment[.]

(Emphasis added.)

The Board and the City present differing interpretations of the language of these gov-

erning provisions. The Board advocates the view that exemption from taxation depends upon proof that the use by DEQ of the property is reasonably necessary or essential to the efficient operation and maintenance of the City Hall. The City argues that the law permits the consideration of "stacked" governmental purposes. In the City's view, the City Hall is being partially utilized for a municipal governmental purpose and partially utilized for a state governmental purpose. Therefore, the property is exempt from taxation because no nongovernmental activities are taking place on the property owned by the City. The Board and the City both find support for their positions in prior decisions of this court. However, we are unable to agree that mandatory precedent supports either of the interpretations offered by the parties because the parties ignore the importance of using a property "primarily" for a "governmental purpose."

◼ In *City of Cheyenne v. Sims*, 521 P.2d 1347, 1348–49 (Wyo.1974), we noted that municipal property is not automatically exempt from taxation under our Constitution and laws. The taxable status of property owned by a governmental entity must be determined as a question of fact by the use made of the property. *Id.* at 1349. The property will be found to be exempt only "when used primarily for a governmental purpose." *Id.*

In *City of Cheyenne v. Board of County Com'rs of Laramie County*, 484 P.2d 706, 707 (Wyo.1971), Laramie County sought to collect property taxes for several buildings owned by the City of Cheyenne at its municipal airport and leased to private corporations or individuals. Writing for the court, Justice Gray began by noting that our Constitution had been amended in 1957 to eliminate automatic exemptions from taxation based on ownership of property by a governmental entity. *Id.* The amendment limited the power of the legislature to exempt municipal property from taxation by inserting the requirement that exempt property must be "used primarily for a governmental purpose." *Id.* at 708. "The problem then gets down to a determination of just what is meant by use of the word 'primarily' and what is meant by the term 'governmental purpose' in the first

clause of the constitution." *Id.* This court determined that the construction given to these terms should apply the general rule that where the established policy is to exempt publicly owned property from taxation, the Constitution and statutes should not be strictly construed in favor of taxation. *Id.* at 708–09. This is consistent with the rule that strict construction of exemption statutes applies to exemptions for property held in private ownership but not to exemptions for public property where exemption is the rule and taxation the exception. 2 Thomas M. Cooley, *The Law of Taxation*, § 673 at 1414–15 (4th ed. 1924).

In *City of Cheyenne*, 484 P.2d at 708, this court applied a test derived from tort law to determine if governmental or proprietary functions were being performed at the airport buildings. We first determined that the fact that a city accomplishes a governmental function through a lessee or receives rent is not controlling. *Id.* at 709. This court also refused to recognize a blanket rule that the mere renting of buildings to a lessee engaged in a for profit activity represents a nongovernmental use. *Id.* Instead, we held that the individual circumstances must determine whether the use is "primarily" for a "governmental purpose." *Id.* Therefore, this court concluded that a specific test could be applied to determine if the airport buildings were being used for a "governmental purpose." The test inquired whether the buildings "were primarily used and being so used as reasonably necessary or essential facilities to the efficient operation and maintenance of the airport." *Id.*

Applying this standard, this court first considered whether three buildings leased to fixed base operators at the Cheyenne airport were taxable. *Id.* This court held that the district court had erred in attempting to apportion the amount of governmental use for each building. *Id.* Instead, we ruled that each building was exempt from taxation because the buildings were being used "primarily" for a "governmental purpose." *Id.* It is significant that this court held no part of the three buildings could be taxed, despite the fact that only one-half of one of the buildings was used for a fixed base operator

and the fixed base operators were all using the buildings for some non-governmental functions. *Id.* Next, this court determined that two other buildings, one leased to a private company and the other leased to the Cheyenne Ambulance Service, were taxable. *Id.* at 709–10. This court held that neither building was being used to supply necessary services for the airport.

*Town of Pine Bluffs v. State Bd. of Equalization,* 79 Wyo. 262, 333 P.2d 700, 703–04, 707 (1958) presented the first opportunity for this court to construe the meaning of the amended language of Wyo. Const. art. 15, § 12 and the amended language of the predecessor of Wyo.Stat. § 39–1–201(a)(v)(C). The Town of Pine Bluffs operated an electric power plant which sold electricity to customers as well as providing electricity for municipal services such as lighting city streets and buildings. *Id.* 333 P.2d at 703. This court ruled that the sale of electricity was generally a proprietary function and the facilities were subject to taxation. *Id.* 333 P.2d at 710. However, furnishing electricity for municipal purposes, such as lighting streets and municipal buildings, was exempt from taxation as a governmental function. *Id.* 333 P.2d at 711. Therefore, the court held that only the proportional value of the power plant property which was used to supply electricity to ratepayers was subject to ad valorem taxation. *Id.* 333 P.2d at 712.

At least one commentator has pointed to a seeming inconsistency between our decision in *City of Cheyenne* and our decision in *Town of Pine Bluffs.* E. George Rudolph, *Wyoming Local Government Law,* § 7.2 at 213 (1985). However, both decisions rely upon the primary use of the property owned by a governmental entity to determine whether it is subject to taxation.

Our analysis of these precedents discloses that the Board and the City have both misconstrued the meaning of the phrase "when used primarily for a governmental purpose," Wyo. Const. art. 15, § 12, and the similar language of Wyo.Stat. § 39–1–201(a)(v)(C). The Board and the City concede that use of property owned by the City for a City Hall is for a "governmental purpose." However, the parties disagree whether additional use of

the same property, at least partially, defeats the express tax exemption for a city hall. Wyo.Stat. § 39–1–201(a)(v)(C). Accordingly, the dispute centers on the meaning of the term "primarily."

Issues of statutory interpretation require this court to apply a carefully considered review process.

We read the text of the statute and pay attention to its internal structure and the functional relationship between the parts and the whole. We make the determination as to meaning, that is, whether the statute's meaning is subject to varying interpretations. If we determine that the meaning is not subject to varying interpretations, that may end the exercise, although we may resort to extrinsic aids of interpretation, such as legislative history if available and rules of construction, to confirm the determination. On the other hand, if we determine that the meaning is subject to varying interpretations, we must resort to available extrinsic aids. If an ambiguous statute has been construed by an agency charged with administering it, we will accord deference to, but are not bound by, that construction. After all, the final construction of an ambiguous statute is a question for the court.

*Parker Land and Cattle Co. v. Wyoming Game and Fish Com'n,* 845 P.2d 1040, 1045 (Wyo.1993).

■ The language of the Constitution is general, the property of a city "when used primarily for a governmental purpose * * * shall be exempt from taxation * * *." Wyo. Const. art. 15, § 12. The statutory language is more specific by exempting from taxation "[p]roperty of wyoming cities * * * owned and used primarily for a governmental purpose including [c]ity * * * halls[.]" Wyo. Stat. § 39–1–201(a)(v)(C). Both provisions state a presumption that the property belonging to a governmental entity is exempt from taxation when used "primarily" for a "governmental purpose." *Town of Pine Bluffs,* 333 P.2d at 710. Wyo.Stat. § 39–1–201(a)(v)(C) extends the presumption to an express exemption for property of a city owned and used "primarily" as a city hall.

The term "primarily" has an ordinary and obvious meaning in the law. "Primarily" means "of first importance" or "principally." *Malat v. Riddell,* 383 U.S. 569, 572, 86 S.Ct. 1030, 1032, 16 L.Ed.2d 102 (1966). *Accord Hibernian Soc. v. Thomas,* 282 S.C. 465, 319 S.E.2d 339, 342–43 (1984) (applying this definition to ad valorem tax exemption statute). The term "primarily" may also be synonymous with "essentially" or "fundamentally" in some circumstances. *Board of Governors v. Agnew,* 329 U.S. 441, 446, 67 S.Ct. 411, 414, 91 L.Ed. 408 (1947); *Brennan v. Harrison County, Mississippi,* 505 F.2d 901, 903 (5th Cir.1975).

■ The language used in the relevant portions of Wyo. Const. art. 15, § 12 and Wyo.Stat. § 39–1–201(a)(v)(C) is unambiguous. The intent, to exempt from taxation property of a governmental entity "when used primarily for a governmental purpose," is stated in such a manner that reasonable persons are able to agree on its meaning with consistency and predictability. *Allied Signal, Inc. v. Wyoming State Bd. of Equalization,* 813 P.2d 214, 220 (Wyo.1991). The purpose of such an exemption is to prevent an escalating spiral of unnecessary taxation and administrative costs with no benefit to the public. 16 Eugene McQuillin, *The Law of Municipal Corporations,* § 44.57 at 206 (3rd ed. 1994). If one governmental entity chooses to tax the property of another governmental entity, the governmental entity forced to pay taxes may have to levy and collect new taxes to meet the demands of the tax. 2 Cooley, *supra,* § 621 at 1313. The effect of such a tax spiral is that the public would be taxing itself to raise money to pay itself. *Id.* The only benefit of such a system is that it satisfies a bureaucratic desire for exactitude by taking money out of one pocket and putting it in another. *Id.* at 1317.

■ As we noted in *City of Cheyenne,* 484 P.2d at 709, the individual circumstances must determine whether a use is "primarily" for a "governmental purpose." We are satisfied that the Board's conclusions are " 'clearly contrary to the overwhelming weight of the evidence on record' " and must be reversed. *Mekss v. Wyoming Girls' School, State of Wyo.,* 813 P.2d 185, 201 (Wyo.1991),

*cert. denied,* —— U.S. ——, 112 S.Ct. 872, 116 L.Ed.2d 777 (1992) (*quoting State ex rel. Wyoming Workers' Compensation Div. v. Brown,* 805 P.2d 830, 833 (Wyo.1991)). Instead, substantial evidence in the record supports a finding that the City uses the property which the County contends is subject to taxation "primarily" as a City Hall. The City Clerk/Treasurer testified that the City purchased the City Hall property because the former building could no longer serve the needs of the City and construction costs for a new building were prohibitive. The acquisition of the City Hall property has resulted in greater efficiency and productivity in City government. The reason for the City to own and use the City Hall property was "principally" or "of first importance" to have a building to house municipal government functions.

■ The fact that approximately one-half of the building is leased to DEQ is secondary. The City Hall is being used "primarily" for the expressly exempt purpose of a city hall. Wyo.Stat. § 39–1–201(a)(v)(C). As we concluded in *City of Cheyenne,* 484 P.2d at 709, once a property is being used "primarily" for a "governmental purpose," the fact that the property is being used for other purposes does not obviate an express statutory exemption from taxation. Therefore, the use of three airport buildings for some nongovernmental functions did not eliminate the exemption from taxation. *Id.* Similarly, the use of the City Hall for some functions not related to the municipal government of the City does not alter the exemption from taxation stated in Wyo.Stat. § 39–1–201(a)(v)(C).

■ The collection of rent by the City for the office space DEQ occupies in City Hall does not destroy the exemption from taxation. "Where the primary and principal use to which property is put is public, the mere fact that an income is incidentally derived from it does not affect its character as property devoted to a public use, so as to prevent its being exempt from taxation." 2 Cooley, *supra,* § 640 at 1343. *Accord Johnson City v. Booth,* 37 Tenn.App. 231, 261 S.W.2d 820, 823 (1953) (holding that municipal water system was exempt from taxation by county

despite the fact that some revenue was derived from the sale of water to non-residents of the municipality). Therefore, in *City of Cheyenne*, 484 P.2d at 708, the rent received from fixed base operators at the Cheyenne airport was not controlling as to whether the use of the property was "primarily" for a "governmental purpose."

The Board argues that this court's decision in *Commissioners of Cambria Park v. Board of Com'rs of Weston County*, 62 Wyo. 446, 174 P.2d 402 (1946), directs a different outcome. We disagree. In that case, a Wyoming corporation leased its property to a religious association for use as a school. *Id.* 174 P.2d at 403–04. The governing law required either exclusive use of the property for religious purposes or use of property for schools so long as the property was "not used for private profit." *Id.* 174 P.2d at 405. This court first determined that use of the property for religious services incidental to the school did not entitle the religious association to an exemption from taxation. *Id.* This court then considered the Wyoming corporation's claim that the property was exempt from taxation. We held the property was not exempt because the Wyoming corporation leased the property and derived profit from the lease. *Id.* 174 P.2d at 409–10.

The present language of Wyo. Const. art. 15, § 12 and Wyo.Stat. § 39–1–201(a)(v)(C) requires only use of a property "primarily" for a "governmental purpose." Therefore, the City's lease to DEQ of some but not all of the office space in the building does not destroy the exemption for the property as a whole. "If part of a building is exempt and the rest taxable, a tax imposed on all the building is uncollectible in toto." 2 Cooley, *supra*, § 732 at 1534. Under *Commissioners of Cambria Park*, if the City had leased the entire property to DEQ, a different outcome would be in order, but it must be remembered that the City only leased a portion of the City Hall property to DEQ.

■ Finally, the Board erred in attempting to apportion the amount of governmental use by the City of the City Hall. Without statutory or regulatory authority, the Board contends that a property in which the City held an undivided interest could be spatially apportioned between exempt governmental use and non-exempt use. We specifically declined to permit apportionment in *City of Cheyenne*, 484 P.2d at 709, when we held that the district court erred in attempting to apportion the governmental use for the three buildings leased to the fixed base operators.

If the constitutional and statutory requirement is for use "primarily" for a "governmental purpose," then the property is exempt from taxation. Spacial apportionment would require express authority in the Constitution or our statutes. *See, e.g., City of Nome v. Catholic Bishop of Northern Alaska*, 707 P.2d 870, 881 (Alaska 1985) (holding spacial apportionment of property is permitted in Alaska by state constitutional language referring to exemption from taxation for "[a]ll, or any portion of," property used exclusively for nonprofit religious activities) and *Ocean County v. Dover Tp.*, 3 N.J.Tax 434, 438 (1981) (holding spacial appointment of property is permitted because the New Jersey legislature specifically provided that portions of buildings leased to a for-profit organization would be taxed and remaining portion used by a non-profit organization would be exempt).

We did order apportionment of ad valorem taxation in *Town of Pine Bluffs*, 333 P.2d at 712. This decision, however, must be limited to its unique facts. The use of the property in *Town of Pine Bluffs* was proprietary because the sale of electricity was not a traditional governmental function. However, exemption from taxation was permitted for the proportion of the property needed to supply electricity for municipal purposes. *Id.* 333 P.2d at 711. Apportionment in that circumstance prevented unfair taxation of resources used for a legitimate "governmental purpose" where the primary use was proprietary.

Public policy and reality must impose restrictions on absolutists. The City is using its City Hall property "primarily" for a tax exempt purpose. The leasing of a portion of the office space in that property to the state to house an agency of state government, DEQ, results in a payment of money from the state to the City for performing this service. However, this rental payment does not entitle the County and the Board to

authorize spacial apportionment of the City Hall property and to tax the City. The assessment of taxes provides a means for a governmental entity to raise revenues to provide essential services to the public. If one governmental entity is permitted to tax another governmental entity which is using its property "primarily" for a "governmental purpose," the public does not benefit. Administrative costs are increased for the sole purpose of moving money from one governmental entity to another. Government efficiency does not begin by taxing other governmental entities whose actions are in compliance with the law.

## IV. CONCLUSION

Property which is used "primarily" for a "governmental purpose" is exempt from taxation. The City is "primarily" using the property the County wants to partially tax for the express "governmental purpose" of a City Hall. Permitting the County to tax the secondary use of the property would impose a burden on the people of this state which the specific language of our Constitution and laws prohibit.

We affirm.

MACY, Justice, specially concurring.

I agree with the result reached by the majority in this case but for different reasons from those which have been expressed in the majority opinion. I believe that the majority opinion unnecessarily strains the meaning of the constitutional and statutory language "used primarily for" and "a governmental purpose" to reach a result which could be achieved by applying the plain meaning of that language. The phrase "used primarily for" does not have the same meaning as the individual word "primarily." I believe that the Legislature intended for the exemption to apply to property which is used predominantly for a "governmental purpose." The plain meaning of "governmental purpose" is any governmental purpose. Our constitution and statutes do not specify that, in order to qualify for the exemption, the governmental entity which owns the property must be the same entity which makes use of the property.

In my opinion, the phrase "used primarily for a governmental purpose" means that, when the property is used predominantly for a governmental purpose by any governmental entity, it is exempt from taxation. When the property is not used predominantly for a governmental purpose, it is subject to taxation. When this reading of the plain language of the constitution and the statutes is applied to the facts of this case, it becomes clear that the City of Lander's property was exempt from taxation. The property was owned by the City of Lander and was used entirely for a governmental purpose—one half as a city hall and one half as office space for a state agency. No evidence existed which suggested that any nongovernmental activities were being conducted on the premises. The county board of equalization's decision was contrary to law.

For these reasons, I agree that the district court's ruling should be affirmed.